UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-00068-FDW

| | |
|---|---|
| SCOTT RANDALL REICH, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>MIKE SLAGLE, )<br>)<br>Respondent. )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court upon Petitioner Scott Randall Reich's pro se 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) and Respondent's Motion for Summary Judgment (Doc. No. 10). Also before the Court is Petitioner's Motion for Discovery. (Doc. No. 19.)

### I.  BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on October 2, 2008, was convicted by a Rutherford County jury of the first-degree murder of Adam Kay. State v. Reich, 690 S.E.2d 769, 2010 WL 347910, at *1 (N.C. Ct. App. 2010) (unpublished). The trial court sentenced defendant to life imprisonment without possibility of parole. Id. The North Carolina Court of Appeals summarized the evidence presented at trial, as follows:

> In early 2005, Scott Randall Reich (defendant) and his wife Margaret moved to Dills Road in Rutherford County. In November 2005, Adam Kay (Kay), his wife, and children also moved to Dills Road. The Reichs' relationship with their neighbors deteriorated. Defendant accused [neighbors] Mark and Tyler Dorsey of shooting at his home, peeping at his wife, stealing, setting fires, tampering with his vehicle, puncturing his tires, and poisoning his dogs.
>
> On 29 October 2006, defendant approached his neighbors, Mr. and Mrs. Cordell. He was dressed in camouflage clothing, with a pistol and a long knife. Defendant

1

was carrying a rifle with a scope and stated that he was looking for Mark Dorsey and Kay because they had been "shooting in his house in his kitchen that day." After telling the Cordells many stories about things that had happened to him, defendant stated that he was "going to get" Kay.

On 30 October 2006, Kay left work and drove home. Kay's fifteen-year-old son found his father's body lying in the driveway when he got home from school. The autopsy revealed two bullet wounds to Kay's head and neck, which the medical examiner opined were fired from an "indeterminate range." The medical examiner testified that based upon test firings, the gun would have been over a foot away from Kay, but how much over a foot, he could not say for certain. Defendant acknowledged that he shot Kay but testified that his gun went off as the two men struggled. As Kay was pulling him forward, defendant believed he may have shot Kay a second time. Defendant disassembled the pistol and threw the gun barrel into the woods. The barrel was never located. In the course of searching defendant's home and the nearby woods, officers discovered a cache of weapons.

Defendant was indicted for the murder of Kay. The trial court submitted possible verdicts of first degree murder, second degree murder, voluntary manslaughter, and not guilty to the jury.

Id.

Petitioner appealed, arguing only one ground – that the trial court erred in admitting evidence of explosive devices found on his property by law enforcement officers. Id. at *2. On February 10, 2010, the North Carolina Court of Appeals issued an opinion, finding no error had occurred. Id. at *3. Petitioner did not seek discretionary review of the decision in the North Carolina Supreme Court. (§ 2254 Pet. 2, Doc. No. 1.)

On July 10, 2013,[1] Petitioner filed a 28 U.S.C. § 2254 petition for writ of habeas corpus in this Court, alleging that the State and his defense attorney withheld crime scene photos and investigators' case notes from him and that the State used "damaged and fabricated evidence to obtain a conviction." § 2254 Pet. 5, Reich v. Perry, No. 1:13-cv-00221-FDW (W.D.N.C.), Doc.

---

[1] This was the date Petitioner signed his habeas petition under penalty of perjury and placed it in the prison mail system. See Houston v. Lack, 487 U.S. 266, 267 (1988).

2

No. 1. The Court dismissed the petition without prejudice on January 16, 2014, because Petitioner had not exhausted his state court remedies before filing his federal habeas petition. Order Dismiss. § 2254 Pet., id. at Doc. No. 3.

Petitioner next filed a pro se motion for appropriate relief ("MAR") on October 17, 2015, in the Superior Court of Rutherford County. (State's Resp. to Cert. Pet. 1 ¶ 3, Doc. No. 1-4.) It was denied on the merits on April 8, 2016. (Order Den. MAR, Doc. No. 1-12.) Petitioner filed petitions for writ of certiorari in the North Carolina Court of Appeals on October 31, 2016, and November 3, 2016. (State's Resp. to Cert. Pet. 2 ¶ 4.) The North Carolina Court of Appeals denied each in separate orders entered on November 17, 2016. (Orders Den. Cert. Pets., Doc. Nos. 1-2, 1-3.)

Petitioner filed the instant § 2254 federal habeas Petition on March 3, 2017.[2] He raises the following grounds for relief: 1) the State knowingly withheld exculpatory and impeaching evidence that one of the officers tasked with securing the crime scene had pending criminal charges; 2) defense counsel rendered ineffective assistance at trial because he knew one of the officers tasked with securing the crime scene had pending criminal charges; (3) defense counsel rendered ineffective assistance when he did not give Petitioner crime scene photos, either prior to or during trial, that contradicted statements made by one of the investigating detectives; and 4) defense counsel rendered ineffective assistance when he failed, either prior to or during trial, to

---

[2] A prisoner's habeas petition is considered filed on the date the prisoner placed it in the prison mailing system. See Houston v. Lack, 487 U.S. 266, 267 (1988). Petitioner has filed a "Certification of Mailing," swearing under penalty of perjury, that he placed his § 2254 Petition in the prison mail system on February 1, 2017. (Doc. No. 1-17.) The cover letter accompanying the habeas Petition is dated March 3, 2017 (Doc. No. 1-18), however, as is the envelope in which the Petition was mailed (Doc. No. 1-20). Clearly, then, Petitioner did not place his § 2254 Petition in the prison mail system on February 1, 2017, notwithstanding his oath to the contrary, so he may not have the benefit of that date for filing purposes.

3

bring to Petitioner's attention that there were crime scene photos that contradicted each other.

With respect to his first two grounds for relief, Petitioner alleges that that he did not learn until after judgment was entered that one of the officers tasked with securing the crime scene pled guilty a few months before Petitioner's trial to crimes that cast doubt on the officer's integrity and credibility. Accordingly, the Court directed Petitioner to submit information about how and when he learned of the officer's convictions. (Doc. No. 2.) Petitioner has complied (Doc. Nos. 3, 5.)

Respondent has filed an Answer (Doc. No. 9) and a Motion for Summary Judgment (Doc. No. 10) raising the statute of limitations defense and, with respect to Petitioner's fourth ground for relief, a procedural default defense (Doc. Nos. 10, 11). Respondent also argues that Petitioner's claims are without merit. (Doc. No. 11.)

Petitioner has responded to the Motion for Summary Judgment (Doc. No. 14), replied to the Answer (Doc. No. 16), and filed various supplements and addendums to his pleadings (Doc. Nos. 4, 5, 7, 18). He also has filed a Motion for Discovery (Doc. No. 19), which Respondent opposes (Doc. No. 20).

**II.     STANDARD OF REVIEW**

**A.  Summary Judgment**

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

#### 1. Statute of Limitation

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a statute of limitation for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The petition must be filed within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The limitation period is tolled during the pendency of a properly filed state post-conviction action. 28 U.S.C. § 2244(d)(2).

#### 2. Adjudication on the Merits

If a habeas petitioner's constitutional claim was adjudicated on the merits in state court, he may obtain relief under § 2254, only if the state court's adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). To obtain relief

5

under § 2254(d)(1), a petitioner "is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

### III. DISCUSSION

#### A. Statute of Limitation

As noted, Respondent raises a statute of limitation defense with respect to all four grounds for relief, and without question, the Petition is untimely under § 2244(d)(1)(A). Judgment was entered in this case on October 2, 2008. The North Carolina Court of Appeals issued its Order denying Petitioner's direct appeal on February 2, 2010. Petitioner then had thirty-five (35) days to seek discretionary review in the North Carolina Supreme Court. See N.C. R. App. P. 15(b) ("A petition for review following determination by the Court of Appeals shall be . . . filed and served within fifteen days after the mandate of the Court of Appeals has been issued to the trial tribunal."); N.C. R. App. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk.").

Because he did not seek discretionary review during that thirty-five-day time frame (§ 2254 Pet. 5), Petitioner's conviction became final on or about March 9, 2010, when the time for seeking direct review expired. See § 2244(d)(1)(A); Gonzalez v. Thaler, 132 S .Ct. 641, 656 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires."). The statute of limitation then ran for 365 days until it fully expired on or about March 9, 2011, six

6

years before Petitioner filed the instant § 2254 Petition.

Petitioner's filings are replete, however, with allegations that he did not discover the factual bases for any of his claims until after he was sentenced. The Court, therefore, must assess whether statutory tolling under § 2244(d)(1)(D) applies to any of Petitioner's claims.[3] See Pace v. Diguglielmo, 544 U.S. 408, 416 n.6 (2005) (application of § 2244(d)(1)(D) is on a claim-by-claim basis).

### B. Brady Claim

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). There are three elements of a due process violation under Brady: (1) the prosecution withheld or suppressed evidence; (2) the evidence is favorable; and (3) the evidence is material. See Moore v. Illinois, 408 U.S. 786, 794–95 (1972).

Petitioner claims the State suppressed evidence that one of the officers tasked with securing the crime scene was convicted before Petitioner's trial of crimes committed prior to and during the investigation of Kay's murder. Specifically, Sergeant Will Sisk of the Rutherford County Sheriff's Department and two other Rutherford County Sheriff's Deputies were the first to respond on October 30, 2006, to the 911 call placed by Kay's son upon arriving home from school and finding his father's body in the driveway. The three deputies secured the crime scene. On April 28, 2008, Sisk was indicted by a Rutherford County grand jury, on one count of

---

[3] Petitioner does not argue that § 2244(d)(1)(C) applies, and he makes no allegations that would support a finding that § 2241(a)(1)(B) applies.

embezzlement of funds by a public officer or trustee, see N.C. Gen. Stat. 14-92, and one count of altering, destroying, or stealing evidence of criminal conduct, see N.C. Gen. Stat. § 14-221.1.[4] The dates of offense were March 28, 2005 through March 22, 2007. (§ 2254 Pet. 6.)

Sisk pled guilty on June 12, 2008, pursuant to a plea deal, to felony larceny and altering, destroying, or stealing evidence of criminal conduct. (Tr. of Plea, § 2254 Pet. 37-38.) Petitioner's trial began on September 22, 2008, three months after Sisk's convictions.

In an affidavit submitted with the State's response to Petitioner's MAR, defense counsel Daniel Talbert acknowledged that at the time of Petitioner's trial, he was aware of the charges against Sisk, that he learned of the charges from media coverage and general conversation at the courthouse, that he received no formal notice of the charges from the State, and that he could not recall if he discussed the charges against Sisk with Petitioner, but he doubted that he had. (Talbert Aff., Pet'r's § 2254 Ex., Doc. No. 1-9.) The State did not dispute Talbert's assertion that prosecutors did not notify him of Sisk's charges or conviction. (State's MAR Resp. 2, Pet'r's § 2254 Ex., Doc. No. 1-11).

Section 2241(d)(1)(D) provides that a petition for writ of habeas corpus must be filed within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. Respondent contends Petitioner should have known about the charges against Sisk prior to his own trial because Sisk's case was widely reported in the media. (Resp't's Summ. J. Br. 15, Doc. No. 15) (citing Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (holding that one-year period was triggered under §

---

[4] Petitioner asserts Sisk was indicted on the § 14-221.1 count on June 12, 2008. (§ 2254 Pet. 6.) However, evidence submitted with the Petition indicates Sisk was indicted on the same date for both offenses (Sisk Inv. and Convict. R., § 2254 Pet. 35-36). Additionally, Petitioner contends Sisk was charged with felony larceny, but he offers no evidence of that.

8

2244(d)(1)(D) on the date inmate could have discovered factual predicate "through public sources"); Green v. Johnson, 515 F.3d 290, 305 (4th Cir. 2008) (time starts under § 2244(d)(1)(D) when inmate could have discovered factual predicate from public sources using due diligence)). The Court need not resolve whether Respondent is correct, because Petitioner has provided the date on which he learned of Sisk's charges and conviction, and it does not change the Court's conclusion that Petitioner's Brady claim is time-barred.

As noted, prior to ordering Respondent to answer the habeas Petition, the Court directed Petitioner to submit information about how and when he learned of Sisk's convictions. (Doc. No. 2.) Petitioner complied, stating that he heard rumors in 2013 that Sisk had been convicted of some criminal offenses. (Doc. No. 3 at 1.) In February 2014, he requested Sisk's "Investigation and Conviction" file from the records department at the Rutherford County Courthouse, and with the help of a family member, Petitioner received the file on May 1, 2014. (Doc. No. 3 at 1.)

Thus, at the very latest, Petitioner learned of the factual predicate for his Brady claim on the date he received Sisk's file. See § 2244(d)(1)(D). The statute of limitation then ran, unchecked, for 365 days until it finally expired on or about May 1, 2015, more than five months before he filed his MAR and almost two years before he filed the instant habeas Petition. None of Petitioner's filings in the state courts after May 1, 2015, served to resurrect or restart the federal statute of limitations. See Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000) (recognizing that state applications for collateral review cannot revive an already expired federal limitations period). Consequently, Petitioner's Brady claim is time-barred under § 2244(d)(1)(D).

The Court holds also that the claim is without merit. "Brady is concerned only with cases in which the government possesses information which the [defense] does not." Carter v. Bell,

218 F.3d 581, 601 (6th Cir. 2000) (citation omitted); see also Barnes v. Thompson, 58 F.3d 971, 976 n.4 (4th Cir. 1995) ("Brady requires the government disclose only evidence that is not available to the defense from other sources, either directly or through diligent investigation."); Allan v. Lee, 366 F.3d 319, 324-325 (4th Cir. 2002) (Brady does not require state to provide material readily available to petitioner through other sources). The undisputed evidence before the MAR court was that defense counsel knew of the charges against Sisk prior to Petitioner's trial. In other words, the undisputed evidence showed the State was not in possession of information that was unavailable to the defense.

Brady imposes obligations only on government actors; it imposes no disclosure obligation upon defense counsel vis. a vis. their clients. Put another way, Brady does not require a defense attorney to inform his client of favorable material evidence, whether that evidence comes from the government or from another source. Nor does Brady require the government to ensure that a counseled defendant receives everything, or for that matter, anything, the government discloses to counsel.

In sum, Petitioner cannot show that the MAR court's rejection of his Brady claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Petitioner's claim is both time-barred and without merit. Therefore, Respondent is entitled to summary judgment on this claim.

**C.    Ineffective Assistance of Counsel Related to Sisk Convictions**

In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance of counsel claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors

so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel[,] . . . [t]he AEDPA standard and the Strickland standard are dual and overlapping, and [the court] appl[ies] the two standards simultaneously rather than sequentially." Lee v. Clarke, 781 F.3d 114, 123 (4th Cir. 2015), as amended (Apr. 15, 2015) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)) (internal quotation marks omitted). Because both standards of review are "'highly deferential' to the state court's adjudication . . . , 'when the two apply in tandem, the review is doubly so.'" Lee, 781 F.3d at 123 (quoting Richardson, 688 F.3d at 139).

Petitioner claims Talbert rendered ineffective assistance at trial because "he was aware of Sgt. Sisk [sic] criminal charges and that Sgt. Sisk was one of three law enforcement officers tasked with securing the crime scene." (§ 2254 Pet. 9.) The Court concludes the factual predicate of this claim could have been discovered through the exercise of due diligence on or about May 1, 2014, if not sooner.

In his MAR, Petitioner alleged that: 1) Kay was murdered on October 30, 2006, 2) on October 31, 2006, Sisk executed a search warrant for Petitioner's home and seized some of Petitioner's property; 3) on November 2, 2006, Petitioner was arrested on eighteen felony and two misdemeanor counts; and 4) on November 5, 2006, Petitioner was charged with the first-degree murder of Kay. (MAR 1-2, Pet'r's Ex., Doc. No. 1-13.) While awaiting trial, Petitioner

received partial discovery from Talbert, including an inventory of evidence seized by Sisk during the search of Petitioner's home. Petitioner alleged some of the property seized by Sisk during the search was not on the inventory list. Beginning in May 2007, Petitioner wrote Talbert once a month for 15 months expressing his concerns about the property missing from the evidence inventory. (MAR 7-8.) Petitioner summed up by stating, "It logically follows that Mr. Talbert inquired into both Sgt. Sisk and the missing evidence[.] Thus finding out about Sgt. Sisk['s] pending charges. Reich was never informed about said pending charges by Mr. Talbert." (MAR 8.)

Petitioner should have made the same connection between his letters to Talbert about the alleged missing evidence and Talbert's knowledge of the charges against Sisk when Petitioner received Sisk's file on May 1, 2014. In other words, the factual predicate for this ineffective assistance of counsel claim could have been discovered through the exercise of due diligence on or about May 1, 2014. See § 2241(d)(1)(D). As explained previously, the statute of limitation ran without interruption until on or about May 1, 2015, making Petitioner's ineffective assistance of counsel claim untimely under § 2241(d)(1)(D).

Petitioner's claim is also without merit. Respondent contends the MAR court implicitly denied this claim on the merits. (Resp't's Summ. J. Br. 8.) The Court finds that is an open question it need not resolve, as Petitioner's claim fails even under de novo review.

As the Court understands Petitioner's claim, the basis of which is spread out over several pleadings, Sisk's convictions for larceny and altering/stealing/destroying evidence of a criminal offense are material because Sisk helped secure the crime scene, executed a search warrant of Petitioner's home, and failed to include all of the property he took from Petitioner's home in the official inventory of property seized pursuant to the search warrant. Petitioner alleges Talbert

knew all of these facts but failed to inform him of the charges against Sisk. Petitioner claims he was prejudiced because he, not Talbert, had the ultimate right to decide how to proceed at trial in light of the information about Sisk. (Pet'r's Resp. to Summ. J. Mot. 7, Doc. No. 14.)

As a general principle, a criminal defendant does not have the right to decide how to proceed at trial on every issue. See. e.g., United States v. Dyess, 730 F.3d 354, 364 (4th Cir. 2013) ("[W]e give counsel wide latitude in determining which witnesses to call as part of their trial strategy."); Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce.'" (quoting Pruett v. Thompson, 996 F.2d 1560, 1571 (4th Cir. 1993))). More importantly, however, Petitioner misstates the Strickland prejudice standard. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

According to Talbert's affidavit, Sisk's convictions were not germane because Sisk had a minimal role in Petitioner's case, was not called as a witness by the State, and was not a necessary witness for either the State or the defense. (Talbert Aff. 2.) Because Petitioner has not alleged facts demonstrating prejudice, the Court does not address whether Talbert's decision not to raise the issue of Sisk's convictions at trial fell below an objective standard of reasonableness. See United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

The Court looks to Petitioner's materiality argument in support of his Brady claim to

assess whether he can demonstrate prejudice under Strickland. United States v. Higgs, 663 F.3d 726, 735 (4th Cir. 2011) ("The standard for Strickland prejudice is the same as for Brady materiality.") (citations omitted). Petitioner argues:

> In the instant case, there was not one eyewitness to the crime. There was just the victim Kay and the alleged perpetrator Mr. Reich. The State's sole evidence is the crime scene and Mr. Kay's body. One of three members of law enforcement tasked with securing the crime scene was Sgt. Sisk . . . . The fact that Sisk was charge[d] with[ ] embezzlement of money, firearms and illegal controlled substances from the county; stealing evidence; and was allowed to plead guilty to felony larceny[,] altering/stealing/destroying criminal evidence was "material" pursuant to Brady. Said "material" would constitute impeachable evidence as it would bring into question any evidence taken from the crime scene.

(Pet'r's Resp. to Summ. J. Mot. 3-4.)

Petitioner's argument fails for a number of reasons. First, other than the time periods overlapping, Petitioner does not allege any facts indicating that the charges against Sisk involved embezzlement, alteration, theft, or destruction of evidence in Petitioner's case. Next, Petitioner does not allege any facts indicating Sisk stole, altered, or destroyed any evidence connected to the murder scene, which occurred on Kay's property, not Petitioner's. Nor does he allege any facts indicating Sisk did anything at the scene other than secure it,[5] and nothing in the record before this Court indicates Sisk seized any evidence, took any crime scene photos, or moved anything at the scene. While Petitioner implies Sisk stole some of his property in the course of executing the search warrant, he does not identify what that property was or its relevance to Kay's murder. In addition, he fails to explain his allegation that crime scene photos show that all of the evidence in his case was destroyed, support that allegation with any facts, or tie the

---

[5] Securing the scene consisted of checking around the outside of Kay's house to ensure no one else was on the premises and making sure no one other than law enforcement entered the crime scene. (Trial Tr. 80-81, Sept. 23, 2008, Resp't's Ex.7, Doc. No. 11-8.)

14

allegation to Sisk.

Finally, Petitioner was not the "alleged" perpetrator; he was *the* perpetrator, having admitted to killing Kay. The State's evidence was not limited to the crime scene and Kay's body. The State called 17 witnesses during its case-in-chief, many of whom did not testify about the crime scene or Kay's body, introduced 63 pieces of evidence, and introduced Petitioner's statements that he killed Kay. The issue before the jury was not whether Petitioner killed Kay; the issue was Petitioner's state of mind when he did it. Petitioner fails utterly to explain why a reasonable probability exists that had the jury known about Sisk's convictions it would have returned a verdict of second-degree murder, manslaughter, or not guilty in Petitioner's case.

Thus, in addition to being time-barred, Petitioner's ineffective assistance of counsel claim is without merit. Therefore, Respondent is entitled to summary judgment on this claim.

### D. Ineffective Assistance of Counsel Related to Crime Scene Photos

In his third and fourth grounds for relief, Petitioner claims trial counsel was ineffective for failing to share certain crime scene photos with him. According to Petitioner, these photos contradict notes taken by Deputy Tommy Raye, who arrived at the crime scene first with Sisk and Euton, and who did not testify at Petitioner's trial. The photos also contradict other crime scene photos, according to Petitioner. Petitioner raised the substance of Ground Three in his MAR, but Respondent contends Ground Four is unexhausted and procedurally defaulted because Petitioner did not raise the claim in his MAR.

The Court need not resolve whether Ground Four is procedurally defaulted because both Grounds Three and Four are barred by the statute of limitation. As Respondent notes, the photos at issue were introduced at trial. Moreover, in his MAR, Petitioner alleges that Talbert provided him the crime scene photos produced in discovery seven months after trial. (MAR 8.) Finally,

Petitioner raised the substance of Grounds Three and Four in his first federal habeas petition, which he filed on July 10, 2013. § 2254 Pet., Reich, No. 1:13-cv-00221-FDW at Doc. No. 1. Thus, by any measure, these claims are untimely under § 2241(d)(1)(D).

      **E.**      **Equitable Tolling**

Absent equitable tolling, Petitioner's claims are barred by the statute of limitations. Equitable tolling of the statute of limitation is available only when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Under Fourth Circuit precedent, equitable tolling is appropriate in those "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)) (internal quotation marks omitted).

This Court dismissed Petitioner's first habeas petition because he had not exhausted his claims in the state courts. Order, Reich, No. 1:13-cv-00221-FDW at Doc. No. 3. Accordingly, by the time he received Sisk's file on May 1, 2014, Petitioner knew he had to exhaust any related federal constitutional claims in the state courts before raising them in a federal habeas petition. Nevertheless, Petitioner did not file his MAR until 17 months after he received Sisk's file.

Petitioner explains that he filed a petition for writ of habeas corpus in the state court, but that petition was denied on June 9, 2014. (Pet'r's Resp. to Mar. 14, 2017 Order 1-2, Doc. No. 3.) Petitioner offers no other explanation for the delay in filing his MAR, except that he had to borrow a law book from another inmate and had to rely on family members to help gather information and documents. Neither of those circumstances is "extraordinary;" it is not

16

uncommon for prisoners to have to rely on others inside and outside the prison system for assistance with legal filings. "Section 2244(d)(1)(D)[,]" however, "does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998). Furthermore, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (citing Cross-Bey v. Gammon, 322 F.3d 1012, 1015 (8th Cir. 2003) ("[E]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."); United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling . . . ."); Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting the argument that a pro se prisoner's ignorance of the law warranted equitable tolling); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (same)).

Petitioner has not demonstrated that he diligently pursued relief in the state courts once he discovered the factual predicates of the claims raised herein. Nor has he identified any "extraordinary circumstance" external to his own control that prevented him from timely filing a federal habeas petition pursuant to § 2241(d)(1)(D). As such, he is not entitled to equitable tolling of the statute of limitation.

    **F.**    **Motion for Discovery**

Petitioner moves for discovery of statements his former wife, Margaret Reich, purportedly gave to police. (Doc. No. 19.) Petitioner seeks discovery of these statements because he believes at least one contains proof of "the conspiracy to commit murder on behalf of . . . Margaret Reich, R.C.S.D. Sgt. Mark Dorsey, son Tyler Dorsey." (Disc. Mot. 2, Doc. No.

17

19.)

Unlike a traditional civil litigant, a habeas petitioner is not entitled to discovery as a matter of course. Bracy v. Gramley, 520 U.S. 899, 904 (1997). In a § 2254 action, a petitioner may engage in discovery only with leave of the court, after having demonstrated good cause for the discovery he requests. Rules Governing § 2254 Cases in the United States District Courts, Rule 6(a). "Good cause" for discovery exists when "a petition for habeas corpus . . . establishes a prima facie case for relief[.]" Harris v. Nelson, 394 U.S. 286, 290 (1969). Specifically, discovery is warranted, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy, 520 U.S. at 908–09 (quoting Harris, 394 U.S. at 300) (internal quotation marks omitted); see also Quesinberry v. Taylor, 162 F.3d 273, 279 (4th Cir. 1998) (observing that Bracy approved the Harris standard).

Petitioner has not raised a claim in his § 2254 Petition alleging a conspiracy between Margaret Reich, Mark Dorsey, and Tyler Dorsey to commit murder. It appears from the Discovery Motion, however, that Petitioner is asserting that prosecutors failed to disclose either these statements or evidence of the alleged conspiracy.

The conspiracy allegations are not related to the Brady claim raised in the habeas petition, and Petitioner may not use a discovery motion to amend his § 2254 petition to add a new constitutional claim, see Fed. R. Civ. P. 15. Furthermore, Petitioner admitted killing Kay, so it is not clear how his conspiracy allegations are relevant to his murder conviction.

For the foregoing reasons, Petitioner has not shown good cause for discovery. Therefore, his motion shall be denied.

**IV. CONCLUSION**

The § 2254 Petition is untimely, see § 2241(d)(1)(A), (D), and equitable tolling of the statute of limitation is not warranted. Additionally, Petitioner's Brady and ineffective assistance of counsel claims related to Sisk's convictions are without merit. Accordingly, Respondent is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DISMISSED** as untimely under 28 U.S.C. § 2241(d)(1)(A), (D);

2. Respondent's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**;

3. Petitioner's Motion for Discovery (Doc. No. 19) is **DENIED**; and

4. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: July 8, 2018

Frank D. Whitney
Chief United States District Judge